OPINION
Plaintiff-Appellant Dennis J. Cox appeals the trial court's decision granting summary judgment in favor of Defendant-Appellee Barsplice Products, Inc. on his intentional tort claim, as well as the ancillary claims for loss of consortium and punitive damages. After applying the test in Fyffe v. Jeno's, Inc. (1991), 59 Ohio St.3d 115, the trial court found that Cox did not raise a genuine issue of material fact for the second element of the tort. Cox has presented the following assignments of error in his appeal:
 I. The trial court erred in granting Barsplice's motion for summary judgment because genuine issues of material fact exist as to whether Barsplice committed an intentional tort.
 II. The trial court erred in granting Barsplice's motion for summary judgment on Appellants' claims for punitive damages and loss of consortium. An appellate court's review of a summary judgment decision is de novo.
Nilavar v. Osborn (1998), 127 Ohio App.3d 1, 10, citing Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. In reviewing a summary judgment decision, the appellate court must apply the standard found in Civ.R. 56, the same as a trial court. According to Civ.R. 56, a trial court should grant summary judgment only when the following tripartite test has been satisfied: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. Harless v. Willis Day Warehousing Co. (1978),54 Ohio St.2d 64, 66.
When reviewing a motion for summary judgment, a court must be careful not to weigh the evidence or judge the credibility of witnesses. Turner v. Turner (1993), 67 Ohio St.3d 337, 341. Instead, it must consider all of the evidence and reasonable inferences that can be drawn from the evidentiary materials in favor of the nonmoving party. Hannah v. Dayton Power Light Co. (1998), 82 Ohio St.3d 482, 485.
Construing the evidence in a light most favorable to Cox, the facts are as follows. At the time of this incident, Dennis Cox had been employed at Barsplice for approximately seventeen months. He primarily operated a saw which cut steel pipe, but also worked on other machines, including the Landis threader on at least one prior occasion. To operate the Landis threader, an employee must place a rebar into the machine and secure it in the vice. The operator then turns a hand wheel to feed the rebar into the cutting mechanism. As long as the vice is working properly and the rebar is secured, the rotating mechanism then threads the end of the rebar while the vice holds it steady and prevents the rebar from rotating.
On December 22, 1997, Darrin Rogers, Cox's supervisor, asked him to finish an order on the Landis threader. Shortly after he began running the rebars through the threader, he asked a Class A operator, Treg Lansing, whether the rebar was threading properly. Although Class A operators did not technically have supervisory powers at the time of this incident, they did have the authority to direct other operators how to operate the machines. Lansing advised Cox that the threader was too loose and he would have to apply pressure to the end of the rebar while turning the feed wheel in order to get a deeper cut. Cox testified that was not the first time he had placed his hands on a rebar as it was fed into the Landis threader. Just a few days before this incident, Cox had assisted another employee by applying pressure to the end of a twenty-five foot rebar as the other employee operated the machine.
After speaking to Lansing on the day of the injury, Cox fed seven to ten pieces of rebar into the machine with his left hand turning the wheel and his right hand pushing the rebar. At some point, the rebar began spinning as it was fed into the machine. Cox continued to push the rebar with his right hand as directed by Lansing. While he was pushing a piece into the machine, his right glove got caught in the spinning rebar, causing a sharp pain in his right hand. He soon realized that three of his fingers had been amputated by the machine. The fingers were later surgically repaired.
Barsplice supervisors were aware that a rebar placed in the Landis threader would occasionally spin, caused either by improper placement in the vice or worn out vice jaws. However, both Tommy Parks, the plant manager, and Darrin Rogers testified in their depositions that they would never instruct an employee to steady a spinning rebar with his hands. Both Parks and Rogers testified they were aware of the danger posed by an employee placing his hands on a spinning rebar. This is the reason why employees are generally instructed to keep both hands on the feed wheel. Nonetheless, this instruction was never relayed to Cox.
Furthermore, Barsplice supervisors had knowledge of a prior incident where an employee sustained an injury to his hand in a similar fashion. Troy Jones submitted an affidavit explaining how he was injured on the Landis threader while employed by Barsplice. He stated that his hands were still on the rebar after it had been loaded into the machine when it began to spin. Although he is unsure if it began spinning due to a vice malfunction or improper loading, his hands became twisted and caught by the spinning rebar. As a result, Jones sprained his finger on his right hand. Jones further stated that he had witnessed supervisors use their hands to steady the rebar while operating the Landis threader.
Although Ohio permits employer intentional tort actions by employees covered by worker's compensation laws, the tort is defined very narrowly. Spates v. Richard E. Jones Assoc. (July 12, 1995), Montgomery App. No. 15057, unreported, at p. 2. In order to establish intent for an employer intentional tort, the employee must prove the following three elements:
 (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation;
 (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and
 (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task.
Fyffe v. Jeno's, Inc. (1991), 59 Ohio St.3d 115, paragraph one of the syllabus.
For an employee to survive a properly supported summary judgment motion in an employer intentional tort action, the employee "must set forth specific facts to raise a genuine issue of fact that the employer committed an intentional tort." Hannah, 82 Ohio St.3d at 485, citing Van Fossen v. Babcock Wilcox Co. (1991), 36 Ohio St.3d 100, paragraph seven of the syllabus. The employee may prove the elements of the tort by direct or circumstantial evidence. Id.
Viewing the evidence in a light most favorable to Cox, it appears he has raised genuine issues of material fact as to the first element and at least part of the third element of the tort. Both Parks and Rogers admitted in their depositions a spinning rebar created a dangerous situation which could cause injury to the operator. This knowledge of a dangerous condition within the business operation may satisfy the first element. Further, Cox testified in his deposition that Treg Lansing ordered him to use his right hand to apply extra pressure to the rebar as it threaded. If we assume Lansing had quasi-supervisory powers, this would indicate the employer required Cox to perform this dangerous task, thus satisfying that portion of the third element.
The issue then becomes whether the supervisors had knowledge that engaging in this dangerous process was substantially certain to cause harm to Cox. This second element is crucial to distinguish between intentional torts and accidents intended to be covered solely by workers' compensation laws. Thompson v. Monarch Marking Systems, Inc. (Apr. 26, 1995), Montgomery App. No 14695, unreported, at p. 3. In order to withstand Barsplice's summary judgment motion, Cox must produce evidence that creates a genuine issue of material fact that Barsplice was substantially certain he would be injured. Heard v. U.P.S. (July 20, 1999), Franklin App. No. 98AP-1267, unreported, at p. 4.
Substantial certainty of harm requires much greater proof than negligence or recklessness. Van Fossen, 36 Ohio St.3d at 117. The supreme court in Fyffe and Van Fossen explained the proof required as a progression beginning with negligence, and culminating with the extreme proof required for substantial certainty. In this regard, the supreme court stated:
 Where the employer acts despite his knowledge of some risk, his conduct may be negligence. As the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, the mere knowledge and appreciation of a risk — something short of substantial certainty — is not intent.
Fyffe, 59 Ohio St.3d at paragraph two of the syllabus, citing Van Fossen, 36 Ohio St.3d at paragraph six of the syllabus. Stated another way, simply knowing that the employee is at risk is insufficient; instead, the employer must be virtually certain the employee will be injured. Spates, supra, at p. 4, citing Van Fossen, at 116.
The Van Fossen court further explained that many acts in industrial settings are inherently dangerous and management fails to guard against injury with safety measures or properly warn employees of the risk involved. Van Fossen, at 117. Such conduct may be considered gross negligence, recklessness, or even wantonness by the employer, but should not be classified as an intentional tort. Id. When inquiring into the risk level necessary to constitute an intentional tort, the courts must explore not only the employer's conduct, but the context in which the conduct takes place. Id. at 116. In other words, "may the resulting injury or disease, and the circumstances in which it is inflicted on the worker, fairly be viewed as a fact of life of industrial employment, or is it rather plainly beyond anything the legislature could have contemplated as entitling the employee to recover only under the Compensation Act?" Id. (Emphasis sic.) The specific facts of each case must be scrutinized in making this determination. Spates, supra, at p. 2.
Most courts have found that prior similar incidents are probative of whether an employer knows a dangerous process or condition is substantially certain to cause injury. See, e.g., Taulbee v. Adience (1997), 120 Ohio App.3d 11, 20; Foust v. Magnum Restaurants, Inc. (1994), 97 Ohio App.3d 451, 455; Goodin ex rel. Sheroan v. Columbia Gas of Ohio, Inc. (Mar. 13, 2000), Athens App. No. 99 CA 30, unreported, at p. 9; Jones v. General Motors Corp. (May 9, 1997), Defiance App. No. 4-96-21, unreported, at p. 4. These cases have found that prior similar incidents should be "considered as one factor of knowledge that an injury is substantially certain to result * * *." Taulbee,120 Ohio App.3d at 20. Nevertheless, these courts also agree that knowledge of prior injuries is not dispositive of the second element of the intentional tort.
In fact, at least one court held that evidence of prior accidents indicates that such injuries may occur in the future, but does not suggest that the employee's injury was substantially certain to occur. Heard, supra, at p. 5. In Heard, the employer was aware of at least eight prior similar incidents where boxes fell off the conveyer belt, injuring employees. The court found that this knowledge was significant to show recklessness, but did not create a genuine issue of material fact that the employer was substantially certain Heard would be injured. Id. Similarly, the one minor prior injury in the present case is not sufficient to create a genuine issue of material fact that Barsplice was substantially certain Cox would be injured.
In addition to prior similar injuries, a court must examine the nature of the dangerous condition in determining whether injury was substantially certain to occur. Taulbee, 120 Ohio App.3d at 21. For example, in our case of Busch v. Unibilt Industries, Inc., we determined the nature of the dangerous condition created a genuine issue of material fact as to whether injury was substantially certain. (Sept. 22, 2000), Montgomery App. No. 18175, unreported. In Busch, the employer required its employees to work eight feet above the factory floor without the benefit of restraints or any other safety devices. This condition, combined with the law of gravity, created a situation where injury to the employees was substantially certain. As a result, we found a genuine issue of material fact existed as to the elements of the intentional tort. Id. at p. 4.
Conversely, the supreme court in Pariseau v. Wedge Products, Inc. did not find the nature of the process to be dangerous enough to meet the substantial certainty test. (1988), 36 Ohio St.3d 124. Pariseau involved a punch press comprised of a "ram" that descended onto a part, which had to be removed when the ram ascended. The press operator wore safety restraints intended to automatically pull the operator's hands out of the way when the ram descended. There was substantial testimony that this ram tended to "repeat," meaning that it descended without warning when the operator was removing the finished part from the press. Id. at 130.
On the night of Pariseau's injury, the ram was repeating and several employees testified they were frightened to operate it, particularly without a 2 x 4 inch piece of wood to remove the completed part. One employee refused to continue operating the machine after it began to repeat. Aware the press was repeating, the foreman recruited Pariseau to operate it, gave him instructions and adjusted his safety restraints. The foreman also removed the 2 x 4 from the area and did not advise Pariseau of its purpose. Id. An hour after Pariseau began operating the press, it repeated and his safety restraints failed, allowing the ram to descend onto his right hand. Three of his fingers were amputated. Id. at 124. The court found that the evidence was certainly sufficient to find the employer reckless, but did not create a genuine issue of material fact that the injury was substantially certain to occur. Id. at 129.
We find the present case more similar to Pariseau than Busch. The Supervisors at Barsplice were aware the vice on the Landis threader malfunctioned at times, causing the rebar to spin. They also knew that the spinning rebar could cause injury to the operator's hands, partially because another employee had injured his hands in the same manner. Similar to Pariseau, this information is sufficient to find that the employer was negligent or possibly even reckless. However, the supervisors' knowledge and appreciation of risk involved with placing one's hands on the rebar while operating the Landis threader does not create a genuine issue of material fact that the employer was substantially certain an employee would be injured. Accordingly, we find the trial court did not err in sustaining Barsplice's motion for summary judgment.
Finally, because Cox's intentional tort claim failed, his derivative claim for punitive damages and his wife's derivative loss of consortium claim also must fail.
 _________ BROGAN, J.
WOLFF, P.J., and GRADY, J., concur.